E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
LAURA A. ALEXANDER (Cal. Bar No. 313212)
Assistant United States Attorney
Environmental Crimes and Consumer Protection Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-1019
    Facsimile: (213) 894-0141
    Email:    laura.alexander@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-184-RGK |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION; DECLARATION OF LAURA A. ALEXANDER |
| v. | Sentencing Date: May 20, 2024 |
| BRIAN MICHAEL GAHERTY, | Sentencing Time: 10:00 a.m.<br>Location:    Courtroom of the |
| Defendant. | Hon. R. Gary Klausner |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Laura A. Alexander, hereby files its Sentencing Position as to defendant BRIAN MICHAEL GAHERTY ("Sentencing Position").

//

//

//

1    This Sentencing Position is based upon the attached Memorandum

2 of Points and Authorities, the Presentence Investigation Report, the

3 Declaration of Laura A. Alexander, the files and records in this

4 case, and such further evidence and argument as the Court may permit.

5 The government respectfully requests the opportunity to supplement

6 its position as may become necessary.

7  Dated: May 6, 2024            Respectfully submitted,

8                               E. MARTIN ESTRADA
                                United States Attorney
9
                                MACK E. JENKINS
10                              Assistant United States Attorney
                                Chief, Criminal Division
11
                                */s/ Laura A. Alexander*
12                              LAURA A. ALEXANDER
                                Assistant United States Attorney
13
                                Attorneys for Plaintiff
14                              UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS.............................................3

      A.    Defendant Left Two Voicemails With Congresswoman
            Waters in August 2022, Threatening to Assault and Kill
            Her......................................................3

      B.    Despite Receiving a Call From a U.S. Capitol Police
            Special Agent Regarding His Threats in October 2022,
            Defendant Persisted and Left Two Additional
            Threatening Voicemails for Congresswoman Waters in
            November 2022............................................4

      C.    Defendant Left Threatening Voicemails With Other
            Congresswomen of Color From September 2022 to February
            2023.....................................................5

III.  SENTENCING GUIDELINES CALCULATION.............................7

IV.   PROBATION CORRECTLY APPLIED A THREE-LEVEL SENTENCING
      ENHANCMENT FOR DEFENDANT'S BIAS-DRIVEN THREATS................7

V.    A 33-MONTH CUSTODIAL SENTENCE IS REASONABLE AND APPROPRIATE
      UNDER THE § 3553(a) FACTORS..................................10

      A.    Nature and Circumstances of the Offense and Need To
            Protect the Public......................................11

      B.    History and Characteristics of Defendant and Need To
            Promote Respect for the Law and Afford Deterrence.......11

      C.    Need To Avoid Unwarranted Sentencing Disparities........14

VI.   CONCLUSION...................................................15

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

**Cases**

Crosby v. United States,
   2015 WL 1457430 (D. Me. 2015) ...................................... 9

Gall v. United States,
   552 U.S. 38 (2007) ............................................... 14

United States v. Armstrong,
   620 F.3d 1172 (9th Cir. 2010) .................................... 10

United States v. McAninch,
   994 F.2d 1380 (9th Cir. 1993) .................................... 10

United States v. Taubert,
   810 Fed. Appx. 41 (2d Cir. 2020) ................................. 9

United States v. Treadwell,
   593 F.3d 990 (9th Cir. 2010) ..................................... 14

**Statutes**

18 U.S.C. § 115(a)(1)(B) ............................................... 2

18 U.S.C. § 875(c) .................................................... 2

18 U.S.C. § 3553(a) .............................................. passim

**Rules**

U.S.S.G. § 1B1.3(a)(2) ................................................. 5

U.S.S.G. § 2A6.1(a)(1) ................................................. 7

U.S.S.G. § 2A6.1(b)(2)(A) .............................................. 7

U.S.S.G. § 3A1.1 ............................................. 7, 8, 9, 10

U.S.S.G. § 3A1.2(b) .................................................... 7

U.S.S.G. § 3E1.1(a) .................................................... 7

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3   "I'mma cut your black ass throat nigga."  Defendant BRIAN
4   MICHAEL GAHERTY ("defendant") anonymously lobbed this viscous and
5   deplorable threat at Congresswoman Maxine Waters, who represents
6   California's 43rd district, on August 8, 2022.  Under a veil of
7   anonymity, and from the comfort of his home in Houston, Texas,
8   defendant spewed these hateful words -- and many others -- through a
9   series of voicemails that he left for Congresswoman Waters at her
10  Hawthorne, California office.  Defendant made his purpose clear: he
11  threatened Congresswoman Waters because she is a Black woman.  For
12  example, in this 40-second, August 8, 2022, voicemail, defendant
13  referenced Congresswoman Waters' race ***four*** times.  In addition to the
14  above-referenced threat, he stated, in the same voicemail, "[Y]ou
15  black bitch. . . . We got something for your ass now bitch, you black
16  motherfucker. . . . We coming for your black ass[.]"

17  Defendant did not stop there.  He left a second threatening
18  voicemail for Congresswoman Waters that same day.  This time, defendant
19  warned Congresswoman Waters that she "better God damn move" and that
20  she had "two days" to do so because "she got the wrong boys in the
21  area," they had "a contract" on her, and defendant and these boys
22  planned to "put a cap between [her] motherfucking eyes" and "stomp
23  her."  Defendant again made his purpose very clear -- he referenced
24  Congresswoman Water's race ***three*** times ("Nigga," "Nigga bitch," and
25  "black ass") in this 54-second voicemail.

26  Even a call from a United States Capitol Police ("USCP") special
27  agent did nothing to deter defendant from spewing hate.  ***After*** USCP
28  Special Agent Michael Guest called defendant in October 2022,

identified himself, and informed defendant that he was calling about defendant's threatening voicemails, defendant continued to threaten to assault and kill Congresswoman Waters.  First, defendant left a voicemail for Congresswoman Waters on November 8, 2022, wherein he expressed his belief that Congresswoman Waters had reported his conduct to authorities, and threatened to kill her in retaliation: "You done fucked up. . . . This ain't no threat. . . . You fucking with the wrong crowd now, nigga."  Defendant again referenced a "contract" to "take [Congresswoman Waters'] ass out," and referenced Congresswoman Waters' race ***three*** times in this 44-second voicemail.

Second, defendant left another voicemail for Congresswoman Waters, two days later, calling her a "black bitch," and telling her to watch her back, because he could "play goddamn gang too." Finally, on November 16, 2022, defendant called Congresswoman Waters' Hawthorne office and told a staff assistant, "Tell Congresswoman Maxine Waters when I see her on the street I'm going to bust her upside her head."

In April 2023, a federal grand jury charged defendant with four counts of making interstate threats, in violation of 18 U.S.C. § 875(c), and four counts of threatening a United States official, in violation of 18 U.S.C. § 115(a)(1)(B).  (Dkt. 1.)  On January 29, 2024, defendant pled guilty, pursuant to a plea agreement, to one count of threatening a United States official.  The United States Probation and Pretrial Services Office ("Probation") subsequently filed its Presentence Investigation Report ("PSR").  (Dkt. 30.) Therein, Probation determined that: (1) defendant's total offense level is 20; (2) defendant's criminal history category is I; and (3) defendant's Sentencing Guidelines range is 33 to 41 months'

imprisonment, one to three years' supervised release, a $10,000 to $95,000 fine, and a $100 mandatory special assessment.  (PSR ¶¶ 41, 100, 103, 108, 109.)  The government concurs with Probation's calculation of defendant's offense level, criminal history category, and sentencing Guidelines.  For his conduct, the government recommends a sentence of 33 months' imprisonment, three years' supervised release, and a $100 special assessment.  Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

## II.   STATEMENT OF FACTS

### A.   Defendant Left Two Voicemails With Congresswoman Waters in August 2022, Threatening to Assault and Kill Her

On August 8, 2022, defendant called Congresswoman Waters' Hawthorne, California district office, and left the following voicemail:

> Hey, you black bitch.  You fuck with my people man. All that racism shit bitch, you up in age, 80 years old and shit, trying to remember 1960 and all that bullshit.  And causing controversy bitch.  We got something for your ass now bitch, you black motherfucker.  Yeah, we coming for you bro.  You better.  Hey, like you told them motherfuckers to go and and do what they had to do.  We coming for your black ass, bitch ass now motherfucker.  You hoe ass bitch.  I'mma cut your throat, I'mma cut your black ass throat nigga.

(Declaration of Laura A. Alexander ("Alexander Decl.") ¶ 3, Ex. 2.) A few minutes later, defendant called Congresswoman Waters' office again, and left the following voicemail:

> Maxine, you outta there (unintelligible) ay.  What, you about 80 years old nigga?  Look, you better go bye bye bitch.  Nigga bitch, look, you got the wrong boys in the area, you got two days (unintelligible).  We got a contract on your bitch

3

1
2
3
4

> ass, black ass, motherfucker ass.  You better move
> man.  You better God damn move (unintelligible).
> If not, we gonna put a cap between your
> motherfucking eyes hoe (unintelligible).  I'm
> gonna stomp you bitch.  We finna stomp you, bitch.
> We finna stomp you bitch.

5

(Id., ¶ 4, Ex. 3.)

6
7
8

   **B.  Despite Receiving a Call From a U.S. Capitol Police Special
        Agent Regarding His Conduct in October 2022, Defendant
        Persisted and Left Two Additional Threatening Voicemails
        for Congresswoman Waters in November 2022**

9
10
11
12
13
14

On October 17, 2022, USCP Special Agent Guest called defendant, identified himself as a USCP Special Agent, and questioned him about his conduct.  (Alexander Decl., ¶ 2, Ex. 1 at 7.)  Defendant provided Special Agent Guest with a false name, and quickly hung up the phone. (Id.)  Notably, Special Agent Guest's warning did nothing to deter defendant.

15
16
17

Just a few weeks later, on November 8, 2022, defendant again called Congresswoman Waters' Hawthorne, California district office, and left his third threatening voicemail for Congresswoman Waters:

18
19
20
21
22
23
24

> Hey Maxine.  You done fucked up. . . .  This ain't
> no threat man.  We're just gonna give you a present
> man.  We're gonna meet you on the street, bitch
> and give you a fucking present.  Like, like, like
> you told everybody else bitch like, uh, box them
> up.  Be negative.  Get in their face.  We're finna
> get in your face bitch.  You nigger, bitch, we
> finna get in your face bitch.  You know what I'm
> saying?  You fucking with a wrong crowd now, nigga.
> You affiliated now with, hey well that's a nigga
> man.  We got a contract to take your ass out bitch.

25

(Id., ¶ 5, Ex. 4.)

26
27

Two days later, defendant called Congresswoman Waters' office again, and left the following voicemail:

28

4

I'm gonna listen to you, Maxine, uh, threatening people all across the goddamn country.  Beat 'em up.  You know, all this violent shit that you advocate, I'm gonna tell you right now, this ain't no threat.  It's a goddamn promise.  Gonna watch your fucking back bitch.  Hey, why can't I say it?  You say it, you black bitch.  You wanna play games?  You telling people, man, and beat them up and you chase the motherfuckers down.  Good people, man.  Fuck you.  We can play goddamn gang too.  Bitch.  You better watch your back hoe.

(<u>Id.</u>, ¶ 6, Ex. 5.)

Less than a week later, on November 16, 2023, defendant called Congresswoman Maxine Waters' Hawthorne office again.  (<u>Id.</u>, ¶ 2, Ex. 1 at 4.)  This time, staff assistant N.W. answered his call.  (<u>Id.</u>)  Defendant stated, "Tell Congresswoman Maxine Waters when I see her on the street I'm going to bust her upside her head."  (<u>Id.</u>)  N.W. asked who was calling, and defendant replied, "fuck, who this is, tell that lying Bitch I'm looking for her."  (<u>Id.</u>)

C.   **Defendant Left Threatening Voicemails With Other Congresswomen of Color From September 2022 to February 2023[1]**

In addition to the violent and threatening voicemails defendant left with Congresswoman Waters, defendant left threatening voicemails with two other Congresswomen of color -- a Latina Congresswoman ("Congresswoman 2") and a black Congresswoman ("Congresswoman 3") – from September 2022 to February 2023, the exact same time period that he threatened Congresswoman Waters.  For example, on September 11, 2022, defendant left Congresswoman 2 the following voicemail:

---

[1]   Defendant's conduct in leaving threatening voicemails for other Congresswomen of color during this timeframe is not charged, but is relevant conduct.  U.S.S.G. § 1B1.3(a)(2) (relevant conduct is "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.").

5

> I ain't threatening you fucking Latino whore.  You
> fucking whore.  My people going to do some damage
> on you.  You know what I'm saying?  Now we're not
> going to kill you.  We're gonna make you suffer a
> bitch.  You better act right, hoe.

(Alexander Decl., ¶ 7, Ex. 6.)

Further, on October 17, 2022, the same day that USPCO Guest telephonically interviewed defendant and warned him to stop threatening Congresswomen of color, defendant left the following voicemail for Congresswoman 2:

> I'm not threatening nobody You.  Keep getting the
> Capitol police, man.  You know what?  You're gonna
> cause the problem for your fuck yourself dog.  I'm
> not threatening nobody.  I'm making a comment.
> Freedom of speech. . . .  Fuck you [Name of
> Congresswoman].  Hey, hey, puta, puta, puta
> (inaudible) hey suck my dick, suck my white dick.
> Bitch, this is not no threat.  Call the Capitol
> police.  I'll tell them to suck my dick too.

(Id., ¶ 8, Ex. 7.)

Defendant did not stop there.  On November 8, 2022, the same day that defendant left a threatening voicemail for Congresswoman Waters, defendant left threatening voicemails for both Congresswoman 2 and Congresswoman 3.  First, defendant left a voicemail for Congresswoman 2, in which he told her she "fucked up," called her a "snitch motherfucker," and warned her to "be careful" and "watch [her] back" because "we gotta . . . take care of our fucking business."  (Id., ¶ 9, Ex. 8.)  He also told her, "We got you, man.  You finito, man." (Id.)  Second, defendant left a voicemail for Congresswoman 3, in which he told her, "[T]his is a Texas syndicate.  Your motherfucking ass is through.  You better watch your fucking back bitch."  (Id., ¶ 10, Ex. 9.)  Defendant persisted in this conduct by leaving

6

voicemails for Congresswoman 2 through February 2023.  (<u>Id.</u>, ¶ 11, Ex. 10.)

### III.  SENTENCING GUIDELINES CALCULATION

Based on the above facts, Probation calculated defendant's total offense level as follows:

| | | |
|---|---|---|
| Base Offense Level: | 12 | U.S.S.G. § 2A6.1(a)(1) |
| Two or More Threats: | +2 | U.S.S.G. § 2A6.1(b)(2)(A) |
| Official Victim: | +6 | U.S.S.G. § 3A1.2(b) |
| Bias Motivation: | +3 | U.S.S.G. § 3A1.1 |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a) |
| Total Offense Level: | 20 | |

Probation also determined that defendant had a criminal history score of zero and a criminal history category of I.[2]  (<u>Id.</u> ¶¶ 57-58.) Based on a total offense level of 20 and a criminal history category of I, Probation found that defendant's advisory Guidelines range was 33 to 41 months' imprisonment, and one to three years' supervised release.  (<u>Id.</u> ¶¶ 100, 103.)  Probation identified no factors that would warrant a departure or variance below the Guidelines range. (<u>Id.</u> ¶¶ 115-116.)

### IV.  PROBATION CORRECTLY APPLIED A THREE-LEVEL SENTENCING ENHANCMENT FOR DEFENDANT'S BIAS-DRIVEN THREATS

Pursuant to U.S.S.G. § 3A1.1(a), a three-level enhancement shall apply if:

> The court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim . . . as the object of the

---

[2] Defendant is not eligible for the zero-point offender adjustment under U.S.S.G. § 4C1.1(a) because he used credible threats of violence in connection with his offense. U.S.S.G. § 4C1.1(a)(3).

7

offense of conviction because of the actual or perceived race . . . of any person.

Here, defendant selected Congresswoman Waters as his victim because she is a Black woman.  Over and over again, defendant made this clear.  In four voicemails (totaling approximately three minutes) wherein defendant threatened Congresswoman Waters' with both violence and death, he emphasized her race **11 times:**

- "Hey, you black bitch."
- "We got something for your ass now bitch, you black motherfucker."
- We coming for your black ass, bitch ass now motherfucker."
- "I'mma cut your black ass throat nigga."
- "What, you about 80 years old nigga?"
- "Nigga bitch, look, you got the wrong boys in the area[.]"
- "We got a contract on your bitch ass, black ass, motherfucker ass."
- "[Y]ou black bitch."
- "You nigger, bitch, we finna get in your face bitch."
- "You fucking with a wrong crowd now, nigga."
- "You affiliated now with, hey well that's a nigga man."

(Alexander Decl., ¶ 3, Ex. 2; ¶ 4, Ex. 3; ¶ 5, Ex. 4; ¶ 6, Ex. 5.) The government thus concurs with Probation that defendant's threats to Congresswoman Waters were bias-motivated and § 3A1.1(a)'s three-level enhancement applies.  (PSR ¶¶27-30.)

Defendant may argue that § 3A1.1(a) does not apply because he does not "hate" black people, and specifically, black women.  He would be wrong.  The three-level bias enhancement does not require the defendant to have ill-will toward the targeted group.  Instead, the defendant merely needs to have "intentionally selected any victim . . . because of the actual or perceived race . . . of any person." U.S.S.G. § 3A1.1(a).  Whether defendant hates black people, and

specifically, black women, is irrelevant to his eligibility for the enhancement.

Similarly, defendant may argue that he targeted Congresswoman Waters not on the basis of her race, but on the basis of her political opinions.  Any such argument holds no water.  Had defendant threatened to assault and kill Congresswoman Waters because he disagreed with certain of her policies and/or political positions, incessant derogatory references to her race would have been unnecessary.  Indeed, defendant only left threatening voicemails for Congresswomen of color, and he called Congresswoman Waters a "black bitch," "nigger," "nigga bitch," or "black motherfucker" in **every single voicemail he left her**.  (Alexander Decl., ¶ 3, Ex. 2; ¶ 4, Ex. 3; ¶ 5, Ex. 4; ¶ 6, Ex. 5.)  And as Probation noted, defendant only referenced Congresswoman Waters' perceived political activities, such as his belief that she advocated for violence, in the third and fourth threatening voicemails he left her.  (Alexander Decl., ¶ 5, Ex. 4; ¶ 6, Ex. 5.)  Defendant's crime was plainly bias-motivated. See Crosby v. United States, 2015 WL 1457430, *14 (D. Me. 2015) (rejecting defendant's claim that his threats were "purely motivated by political, social, and economic concerns" and applying hate-crime enhancement under U.S.S.G. § 3A1.1(a); defendant's threatening communications included "frequent use of ethnic slurs" which established beyond a reasonable doubt that the defendant targeted the victim because of her perceived ethnicity and religious beliefs); United States v. Taubert, 810 Fed. Appx. 41, 45 (2d Cir. 2020) (finding district court's sentence substantially reasonable where it applied U.S.S.G. § 3A1.1(a)'s hate-crime enhancement; despite defendant's claims of political motivation, the district court

9

described his threats to President Barack Obama and Congresswoman Maxine Waters as "hateful tirades").

Finally, applying the bias enhancement to defendant is not merely "piling on" any available sentencing enhancement.  The Ninth Circuit explains that, "[t]he purpose of the Guideline is to punish those who have a hate crime motivation and to deter future hate crimes."  United States v. Armstrong, 620 F.3d 1172, 1176 (9th Cir. 2010).  That purpose is simply not reflected in any of the other Guidelines calculations applicable here.  Foregoing the bias enhancement would therefore significantly under-represent an aspect of defendant's conduct that the Guidelines have singled out for special punishment.  And foregoing the enhancement would be the opposite of deterrence: it would send a message to criminals and victims alike that it is acceptable to target black women for crimes.

Thus, the evidence establishes beyond a reasonable doubt that defendant specifically targeted and threatened Congresswoman Waters because of her race, and the government thus joins Probation's recommendation that the court apply the three-level sentencing enhancement under § 3A1.1.

## V.   A 33-MONTH CUSTODIAL SENTENCE IS REASONABLE AND APPROPRIATE UNDER THE § 3553(a) FACTORS

The government respectfully requests that the Court adopt Probation's factual findings and Guidelines calculations and sentence defendant to 33 months' imprisonment, three years' supervised release, and a $100 special assessment.  Such a sentence is "sufficient, but not greater than necessary," to comply with the goals of sentencing.  See 18 U.S.C. § 3553(a)(2).

**A.    Nature and Circumstances of the Offense and Need To Protect the Public**

On five separate occasions in August and November 2022, defendant threatened to assault and kill Congresswoman Waters. Defendant's threats were violent, graphic, and left no detail to the imagination -- he threatened to "bust [Congresswoman Waters] upside her head," "cut [her] black ass throat," "put a cap between [her] motherfucking eyes," "stomp [her]," "get in [her] face," fulfill a "contract to take [her] ass out," and "play goddamn gang." (Alexander Decl., ¶ 2, Ex. 1 at 4; ¶ 3, Ex. 2; ¶ 4, Ex. 3; ¶ 5, Ex. 4; ¶ 6, Ex. 5.)  Importantly, defendant made clear to Congresswoman Waters that he targeted her because she was a Black woman; as discussed above, he referenced defendant's race 11 times over the course of four voicemails totaling approximately three minutes. (Id.)  Defendant's choice of words (e.g., "nigga" and "black bitch") and context (e.g., "I'mma cut your black ass throat") clearly demonstrate that his crime was motivated by racial bias and intended to demean, belittle and silence Congresswoman Waters.  A sentence within the Guidelines range appropriately reflects the seriousness of defendant's crime and the need to protect the public, while a low-end recommendation reflects that defendant took responsibility for his crime.  See 18 U.S.C. §§ 3553(a)(1), (2)(A)-(C).

**B.    History and Characteristics of Defendant and Need To Promote Respect for the Law and Afford Deterrence**

Although defendant has no criminal history, he was presented with the opportunity to halt his criminal conduct, and swiftly rejected it.  On October 17, 2024, USCP Special Agent Guest called defendant, identified himself as a federal agent, and informed

11

defendant that he was calling regarding threatening voicemails defendant left for Congresswomen of color, and specifically, for Congresswoman 2.  (Alexander Decl., ¶ 1, Ex. 1 at 4.)  Defendant provided Special Agent Guest with a false name and quickly hung up. (Id.)  Rather than cease his criminal conduct after discovering that he was being investigated by the USCP, defendant doubled down. Within hours, he called Congresswoman 2 and threatened her with further violence in apparent retaliation for what he perceived as Congresswoman 2's report of his voicemails to the USCP.  (Id., ¶ 8, Ex. 7.)  He further made his disrespect for law enforcement clear: "Call the Capitol police.  I'll tell them to suck my dick too." (Id.)  Only a few weeks later, defendant left two additional, violent voicemails with Congresswoman Waters.  (Id., ¶ 5, Ex. 4; ¶ 6, Ex. 5.)

In mitigation, defendant has had a moderately challenging life. Defendant's father suffered from mental health issues during defendant's childhood, and his family also struggled financially. (PSR ¶¶ 67-70.)  In 2015, defendant suffered work-related injuries, and in 2016, defendant was the victim of a shooting and attempted robbery.  (Id. ¶¶ 76-77.)  These traumas are significant, and might warrant a below-Guidelines sentence if defendant were being sentenced for a single loss of impulse control.  That is not the case. Whatever trauma defendant harbors that might motivate spontaneous outbursts is not at issue here.  Defendant is being sentenced for a deliberate and carefully calculated crime.  Defendant had time to reflect on his conduct and stop it – *especially* when USCP Special Agent Guest called him to discuss his threatening voicemails -- but he chose instead to continue.

1    Relatedly, in his interview with Probation, defendant revealed
2    that he suffers from Post-Traumatic Stress Disorder ("PTSD") and that
3    his medications cause him to "blackout for periods of time," and he
4    believes this "contributed to his conduct in the instant offense."
5    (PSR ¶ 22.)  Simply put, there is no evidence that defendant's PTSD
6    diagnosis undermined his ability to stop leaving violent and
7    threatening voicemails with Congresswoman Waters, or understand the
8    grave harm he inflicted on her.  Defendant's November 2022
9    voicemails, in fact, demonstrate the exact opposite: defendant
10   indicated that he believed Congresswoman Waters reported his earlier
11   threats to her and thus threatened to retaliate against her with more
12   violence: "You done fucked up. . . . You fucking with the wrong crowd
13   now, nigga. . . . We got a contract to take your ass out bitch."
14   (Alexander Decl., ¶ 5, Ex. 4.); see United States v. McAninch, 994
15   F.2d 1380, 1389 (9th Cir. 1993) ("The district court did not clearly
16   err in rejecting [the defendant's] attempt to justify his racial
17   animus with psychological excuses.").

18   The government submits that its recommended sentence
19   appropriately balances all aggravating and mitigating factors.  A
20   significant sentence is warranted by defendant's persistent pattern
21   of hateful and dangerous criminal conduct.  And a sentence at the low
22   end of the Guidelines range appropriately accounts for defendant's
23   childhood trauma and health issues.  See U.S.S.G. § 3553(a)(1).

24   Further, a 33-month custodial sentence will serve the need for
25   general and specific deterrence by sending a message that targeting
26   and threatening Congresswomen of color with assault and death because
27   of their race will result in a non-trivial custodial sentence.  By
28   contrast, any below-Guidelines sentence would send the message to

1  defendant, and those that would emulate his conduct, that the cost of
2  engaging in such abhorrent behavior is insignificant.  Such a
3  sentence would not adequately deter defendant from committing
4  additional crimes again upon release, nor would it adequately deter
5  others from following in his footsteps.

6      Finally, the maximum available three-year supervised release
7  term will be crucial to holding defendant accountable for his future
8  actions, especially given his history of: (1) continuing to threaten
9  Congresswomen, including Congresswoman Waters, after being contacted
10  by federal law enforcement regarding such conduct, and (2) blatantly
11  proclaiming his disrespect for law enforcement.  Defendant's criminal
12  conduct demonstrates that he has difficulty living as a law-abiding
13  citizen and the recommended term will assist defendant in
14  transitioning back into the community, finding stable employment, and
15  participating in mental health treatment.

16      **C.    Need To Avoid Unwarranted Sentencing Disparities**

17      Section 3553(a)(6) requires the Court to minimize sentencing
18  disparities among similarly situated defendants.  One way of doing so
19  is to correctly calculate the Guidelines range.  See United States v.
20  Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the
21  Guidelines range was correctly calculated, the district court was
22  entitled to rely on the Guidelines range in determining that there
23  was no 'unwarranted disparity' . . ."); Gall v. United States, 552
24  U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was
25  clearly considered by the Sentencing Commission when setting the
26  Guidelines ranges.").  Here, under the correctly calculated
27  Guidelines range, other defendants "with similar records who have
28  been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), can

expect to receive a sentence between 33 and 41 months' imprisonment.
Thus, the government's recommended 33-month sentence would avoid an
unwarranted disparity with similarly situated defendants.

## VI.   CONCLUSION

For the foregoing reasons, the government recommends that the
Court adopt Probation's Guidelines calculations and impose a
Guidelines sentence of 33 months' imprisonment, three years'
supervised release, and the $100 mandatory special assessment.

1                    DECLARATION OF LAURA A. ALEXANDER

2        I, Laura A. Alexander, declare as follows:

3        1.    I am an Assistant United States Attorney ("AUSA") in the

4   United States Attorney's Office for the Central District of

5   California, and I have been assigned to represent the government in

6   connection with this matter.  I make this declaration in support of

7   the government's Sentencing Position.

8        2.    Attached as **Exhibit 1** is a true and correct copy of a U.S.

9   Capitol Police Incident Narrative Report.

10       3.    Attached as **Exhibit 2** is a true and correct copy of the

11  audio recording of a voicemail defendant left, on August 8, 2022,

12  with the phone number associated with Congresswoman Waters'

13  Hawthorne, California office.

14       4.    Attached as **Exhibit 3** is a true and correct copy of the

15  audio recording of a second voicemail defendant left, on August 8,

16  2022, with the phone number associated with Congresswoman Waters'

17  Hawthorne, California office.

18       5.    Attached as **Exhibit 4** is a true and correct copy of the

19  audio recording of a voicemail defendant left, on November 8, 2022,

20  with the phone number associated with Congresswoman Waters'

21  Hawthorne, California office.

22       6.    Attached as **Exhibit 5** is a true and correct copy of the

23  audio recording of a voicemail defendant left, on November 10, 2022,

24  with the phone number associated with Congresswoman Waters'

25  Hawthorne, California office.

26       7.    Attached as **Exhibit 6** is a true and correct copy of the

27  audio recording of a voicemail defendant left, on September 11, 2022,

28  with another Congresswoman of color ("Congresswoman 2").

16

8.    Attached as **Exhibit 7** is a true and correct copy of the audio recording of a voicemail defendant left, on October 17, 2022, with another Congresswoman 2.

9.    Attached as **Exhibit 8** is a true and correct copy of the audio recording of a voicemail defendant left, on November 8, 2022, with Congresswoman 2.

10.   Attached as **Exhibit 9** is a true and correct copy of the audio recording of a voicemail defendant left, on November 8, 2022, with the phone number associated with another Congresswoman of color ("Congresswoman 3").

11.   Attached as **Exhibit 10** is a true and correct copy of the audio recording of a voicemail defendant left, on February 23, 2022, with the phone number associated with Congresswoman 2.

I declare under penalty of perjury under the laws of the United States of America that the foregoing in true and correct and that this declaration is executed at Los Angeles, California, on May 6, 2024.

*/s/ Laura A. Alexander*
LAURA A. ALEXANDER
